IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELLY I.,[1]

                    Plaintiff,                                Case No. 6:25-cv-00524-AP

         v.                                                  **OPINION AND ORDER**

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

_____

POTTER, United States Magistrate Judge:

Plaintiff Shelly I. brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration, denying her application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff alleges that the Commissioner erred when (1) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony, (2) the ALJ found the medical opinion of Joeth Ryan, PA-C, only partly persuasive, and (3) the ALJ rejected the lay testimony of Plaintiff's spouse. Pl.'s Br., ECF No. 14. For the reasons outlined below, the Commissioner's decision is AFFIRMED.

_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on August 03, 2023, alleging disability since December 31, 2020. Tr. 18, 212–19. Her claims were denied initially and upon reconsideration. Tr. 113, 119, 127, 131, 135, 139. Plaintiff requested a hearing before an ALJ and appeared via telephone before the Honorable MaryKay Rauenzahn on October 24, 2024. Tr. 142–43, 37–62. After the hearing, Plaintiff amended her alleged onset date to November 03, 2022. Tr. 18, 263.  In a written decision dated December 09, 2024, ALJ Rauenzahn determined that Plaintiff was not disabled under the Social Security Act. Tr. 15–36. Plaintiff sought review from the Appeals Council; the Appeals Council declined. Tr. 207–08, 1–6. Plaintiff now seeks judicial review.

Plaintiff was 44 years old on her amended alleged onset of disability date. *See* Tr. 28. She alleges disability due to bipolar 1 disorder, depression, mania, ADHD, fibromyalgia, Barrett's esophagus, PTSD, insomnia, morbid obesity, sleep disorder, GERD, migraines, IBS, hematuria, breathing problems, and shoulder problems. Tr. 65. Plaintiff has at least a high school education and prior work experience as a caregiver, custodian, housekeeper, and office worker. Tr. 28, 284–85.

## STANDARD OF REVIEW

A district court reviews de novo an ALJ's decision to deny benefits. *Obrien v. Bisignano*, 142 F.4th 687, 693 (9th Cir. 2025). When there is no legal error, the denial of benefits will only be overturned if the ALJ's decision "is not supported by substantial evidence." *Id.* (internal quotation and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted).

2 – OPINION AND ORDER

This is not a high bar; substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court may not substitute its judgment for that of the ALJ when the evidence could support either affirming or reversing the ALJ's decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

## DISCUSSION

A person is disabled when they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining whether someone seeking benefits is disabled, the ALJ applies a "five-step sequential evaluation process." 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). If at any point in the five-step process the ALJ determines that the person is or is not disabled, the process stops. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Woods v. Kijakazi,* 32 F.4th 785, 787 n.1 (9th Cir. 2022).

At the first step the ALJ must determine whether the claimant has performed work at or above the level of "substantial gainful activity" during the relevant period; if so, they are not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). The second step focuses on the claimant's physical or medical impairment(s); a claimant is not disabled unless they can show a severe impairment that has lasted or is expected to last at least a year or is expected to result in death. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). At the third step, the ALJ evaluates whether the severity of the impairment(s) meets or equals one of the impairments listed by the Commissioner of Social Security. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If any impairment or combination of impairments is equivalent to one of the listed impairments, the

claimant is presumptively disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If not, the ALJ proceeds to the fourth step. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

Before proceeding to steps four and five, the ALJ must determine the claimant's residual function capacity (RFC). 20 C.F.R. §§ 404.1520(e); 416.920(e). This analysis determines the most a claimant can do on a sustained basis despite their limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Then, the fourth step requires an analysis of the claimant's past work in conjunction with their RFC; if the claimant can still do their past relevant work, they are not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). At the fifth step, the question is whether given the claimant's present abilities, there is another type of job they can do; if the claimant can do another job, they are not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). The claimant bears the burden of proving steps one through four of the sequential analysis, after which the burden shifts to the ALJ to show a claimant can perform any jobs that exist in substantial numbers in the national economy. 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2).

Here, the ALJ determined that Plaintiff satisfied the first two steps of the analysis. Tr. 20–21. At step three, though, the ALJ determined that Plaintiff's impairments did not meet or equal one of the impairments listed by the Commissioner. Tr. 21. The ALJ then conducted the RFC assessment and determined that Plaintiff could perform light work, with the following additional limitations

> [T]he claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for approximately six hours and sit for approximately six hours, in an eight-hour workday. The claimant cannot climb ladders, ropes and scaffold and can occasionally climb stairs and ramps. The claimant can occasionally stoop, crouch, kneel and crawl. The claimant can occasionally reach overhead with the left upper extremity. The

4 – OPINION AND ORDER

claimant can understand, remember and carry out simple instructions and tasks. The claimant can perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties, no work on a moving conveyor belt and no work requiring hourly quotas. The claimant can have no general public contact, occasional work-related coworker interaction and frequent supervisor interaction. The claimant can have no exposure to noise greater than at the moderate level and cannot perform work in near proximity to moving mechanical parts, nor in high, unprotected places, all as rated by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT).

Tr. 23.

At the fifth step, the ALJ determined, with the aid of testimony from the vocational expert (VE), that Plaintiff could perform their prior work as a housekeeper. Tr. 28. Alternatively, the ALJ determined that Plaintiff could perform work as a marker (165,000 jobs in the national economy), routing clerk (123,000 jobs in the national economy), collator operator (31,000 jobs in the national economy), or any other job suiting Plaintiff's age, education, work experience, and residual functional capacity. Tr. 29.

Plaintiff alleges the ALJ erred in three ways: (1) rejecting the Plaintiff's own subjective symptom testimony; (2) finding the medical opinion of PA-C Ryan only partly persuasive; and (3) failing to properly consider the lay testimony of Plaintiff's spouse. Pl.'s Br. 2–3.

## I.      Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to give clear and convincing reasons for discounting her subjective symptom testimony. Pl.'s Br. 8–14.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The ALJ must first determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain

5 – OPINION AND ORDER

or other symptoms alleged." *Id.* (internal citations and quotations omitted). If this first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ then must determine the intensity and persistence of symptoms by considering "all of the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1). "[T]he ALJ can reject the claimant's testimony about the severity of [their] symptoms *only* by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (emphasis added) (internal quotation and citation omitted). Specific, clear and convincing reasons are those which "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

The ALJ discounted Plaintiff's symptom testimony in part because it was inconsistent with her ability to travel and attend events. Tr. 25. First, the ALJ noted that Plaintiff's decision to stop working coincided with the timing she and her husband began traveling in their RV. Tr. 27. While it is unclear when exactly Plaintiff stopped working as a paid caregiver,[2] as of January 12, 2022, therapy notes state she was "looking forward to traveling across US in RV with her husband hopefully starting in May, excited to see [G]rand [C]anyon and many other places she has never visited." Tr. 589. At her hearing, Plaintiff testified that she did not begin traveling until May, but that she set out on the road in February 2022, and "moved to Vancouver for a little while." Tr. 44. In April 2024, Plaintiff was looking forward to going to Mount Hood for her

---

[2] At her hearing, Plaintiff testified that she performed no work in January 2022. Tr. 43–44. However, counseling notes from January 12, 2022, state she was still employed as a caregiver, and had quit only her second job at a gas station because having two jobs was too stressful. Tr. 589.

birthday to "enjoy the amenities and time with family." Tr. 1023, 1028. The ALJ did not err in finding Plaintiff's ability to travel inconsistent with her allegations of debilitating mental health limitations. *See Wilson v. Berryhill*, 732 Fed. App'x 504, 507 (9th Cir. 2018).

The ALJ further noted that Plaintiff was able to attend a car show, even though she reported an increase in her symptoms. Tr. 27. The ALJ noted Plaintiff downplayed her ability to travel, but "the fact that she could attend a car show in August 2024 while reporting an increase in mental health symptoms shows that even with an increase in symptoms she is not incapacitated and can still tolerate some public contact." Tr. 27. Moreover, during that same period, Plaintiff reported symptoms so extreme that she was "unable to leave her home to walk her dog" but was planning to go to the races in Boise. Tr. 1145. Although Plaintiff testified that she attended the car show in 2024 only briefly, and only because she had already paid for the tickets, this was Plaintiff's second year attending a car show during the relevant disability period. Tr. 53.

The ALJ also noted that the objective and other medical evidence in the record did not support the level of severity of Plaintiff's symptom allegations. For example, Plaintiff's migraine headaches were well controlled with over-the-counter medication. Tr. 1044. And although Plaintiff experienced mental health ups and downs, on balance, the ALJ concluded there was insufficient evidence to warrant a finding of disability. As the ALJ noted, Plaintiff's symptoms waxed and waned throughout the relevant period, but she never required inpatient or emergent treatment for her psychiatric symptoms. Tr. 27. Additionally, Plaintiff reported her symptoms improved with traditional counseling therapy. *See* 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii) (ALJs may rely on evidence of improvement in considering a claimant's

record). By September 2024, Plaintiff began to report improved symptoms, and by October, her moods had stabilized.

In sum, the ALJ provided clear and convincing reasons supported by substantial evidence in partially rejecting Plaintiff's symptom testimony. Because the ALJ provided a reasonable reading of the record, her decision will not be disturbed.

## II.    Medical Opinion of Joeth Ryan, PA-C

A medical opinion, in the context of SSA claims, is a statement from a medical source about what a claimant can still do despite their physical or mental impairment-related limitations. 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). In deciding whether a claimant is entitled to benefits, an ALJ must articulate how persuasive they find each of the medical opinions in a claimant's file. 20 C.F.R. §§ 404.1520c(b); 416.920c(b). The most important factors in evaluating the persuasiveness of medical opinion evidence are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (quoting *Woods*, 32 F.4th at 792). Supportability is evaluated based on the "relevant [] objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). As to consistency, the more consistent a medical opinion is with the evidence from medical and non-medical sources in the record, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

On October 24, 2024, Plaintiff's mental health provider, Joeth Ryan, PA-C, submitted a medical opinion form in support of Plaintiff's disability application. Tr. 1183–88. PA-C Ryan

stated that she has treated Plaintiff one-to-two times per week since April 2023, specifically focusing on psychiatric medication management. Tr. 1183. PA-C Ryan opined that Plaintiff's symptoms could impair her ability to perform full-time work without special accommodation. Tr. 1184. PA-C Ryan rated Plaintiff as having moderate limitations in her ability to understand, remember, and carry out simple work-related instructions, and marked limitations regarding complex instructions. Tr. 1186. PA-C Ryan opined that Plaintiff would be off-task for 10% of a workday and would likely be absent from work three or more days per month due to her symptoms of anxiety, panic, and mood dysregulation. Tr. 1188.

The ALJ found PA-C Ryan's opinion partly persuasive "only to the extent that she finds no more than moderate limitations in the ability to perform simple and law public work." Tr. 27 (citing Tr. 1186). The ALJ found the remainder of PA-C Ryan's opinion unpersuasive. To start, the ALJ found PA-C Ryan "supports her opinion with very brief explanation of the claimant's subjective complaints but the limits she cites are mostly vague and undefined." Tr. 27. By way of example, the ALJ cited to Ryan's statement that Plaintiff could "'possibly' experience panic, anxiety, inattention and mood dysregulation in a simple, low stress job." Tr. 27. And the ALJ found PAC-Ryan's descriptions of Plaintiff's limitations did not amount to a statement relaying the most Plaintiff can do despite her impairments. Tr. 27. Finally, the ALJ found PAC-Ryan's opinion was "generally inconsistent with her own treatment notes that indicate 'mood has stabilized and anxiety has decreased.'" Tr. 27 (citing Tr. 1212).

Plaintiff argues that the ALJ failed to provide substantial evidence to support her conclusions regarding PA-C Ryan's medical opinion. Pl.'s Br. 5–8. Plaintiff argues the ALJ failed to consider the concrete restriction to being off task for 10% of a given workday and

9 – OPINION AND ORDER

would miss three or four workdays per month. Pl.'s Br. 7. Additionally, Plaintiff argues that the single chart note relied on by the ALJ in her consistency analysis does not amount to substantial evidence.

The Court agrees with the ALJ that limitations predicated with caveats such as "possibly" are equivocal and therefore not supported. And, although explained with less-than-ideal clarity, the ALJ's decision regarding PA-C Ryan is discernible and supported by substantial evidence. *See Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (noting that even if an ALJ's decision is explained with "less-than-ideal clarity," any error is harmless so long as the agency's path may be reasonably discerned); *see also Waldram v. Kijakazi*, No. 22-35893, 2023 WL 8433769, at *2 (9th Cir. Dec. 5, 2023) (no legal error where the ALJ adequately explained their decision).

The concrete limitations identified by PA-C Ryan, including that Plaintiff would be off task up to 10% of a workday and would miss multiple workdays per month, were not supported by the explanation in the opinion. PA-C Ryan does not provide objective evidence to support her conclusions, nor does she provide explanations that support concrete restrictions proffered. Instead, the checkbox form supplied by PA-C Ryan merely listed "ADHD, anxiety, mood" as symptoms that would cause the time off task. Tr. 1188.

Additionally, as the ALJ pointed out, PA-C Ryan's opinion is largely based on Plaintiff's subjective testimony. Tr. 27. Indeed, most of PA-C Ryan's chart notes indicate Plaintiff's appointments are conducted solely by telephone, and symptomatic descriptions are entirely based on Plaintiff's reports. *See, e.g.,* Tr. 907, 915, 919, 987, 996, 1011, 1033, 1143, 1151, 1152, 1197. And, as discussed earlier in this opinion, the ALJ properly discounted Plaintiff's symptom

testimony. Thus, the ALJ properly relied on this factor in discounting PA-C Ryan's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

As to whether the ALJ's conclusion that PA-C Ryan's opinion was inconsistent with her treatment notes was supported by substantial evidence, this is a closer call. As Plaintiff points out, the ALJ provided a reference to a single chart note to support her conclusion. *See* Pl.'s Br. 7. But where, as is the case here, the evidence is "susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017) (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). While a single chart note may not always amount to evidence of inconsistency, in this case, given the proximity in time between the chart note in question and the medical opinion, the single note is substantial evidence. The medical opinion was issued two weeks after Plaintiff reported marked improvement in her symptoms based on her new medication regimen. Tr. 1212. "Substantial evidence is 'more than a mere scintilla' and means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ford v. Saul*, 950 F.3d 1141, (9th Cir. 2020) (quoting *Biestek*, 587 U.S. at 103) (citation modified)). Considering the ALJ's decision in its entirety—which this Court must do—the ALJ provided sufficient evidence to discount PA-C Ryan's opinion. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (noting a reviewing court must consider all pages in an ALJ's decision).

### III.     Lay Witness Testimony

The ALJ failed to properly consider the lay witness testimony of Plaintiff's husband (Justin). Justin provided two identical written statements in support of Plaintiff's disability petition. Tr. 291-298; 323-330. He wrote that Plaintiff struggles with pain, anxiety, fatigue, and memory problems. He wrote that they do everything together, but how much they do depends on Plaintiff's mood. *Id.*

"An ALJ must take into account lay witness testimony as to the claimant's symptoms or how impairments affect the claimant's ability to work." *Gerde v. Berryhill*, 717 F. App'x 674, 677 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)). Here, the ALJ merely stated that she "reviewed and considered the supportive statements and observations from the claimant's spouse . . . concerning her impairments and associated decreased work capacity when determining the above residual functional capacity." Tr. 28. This statement provides no insight as to what degree the ALJ accepted or rejected the lay witness testimony and is therefore error.

However, this Court cannot conclude that the ALJ's error is harmful and warrants reversal because the evidence supports the ALJ's ultimate nondisability determination. See *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (holding that even when the ALJ commits legal error, a court will "uphold the decision where that error is harmless") (quoting *Treichler*, 775 F.3d at 1099) (cleaned up). An error is harmless if "it is inconsequential to the ultimate nondisability determination," or when, "despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citation modified). Justin's testimony describes similar limitations to those identified in

12 – OPINION AND ORDER

Plaintiff's testimony. Thus, although the ALJ failed to provide any insight into how she analyzed Justin's testimony, she provided clear and convincing reasons for rejecting Plaintiff's testimony. Where an ALJ provides "reasons for rejecting testimony by one witness," the ALJ may rely on those same reasons "when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

In sum, the ALJ's decision that Plaintiff was not disabled is a reasonable reading of the record and is supported by substantial evidence.

## **CONCLUSION**

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this  22nd  day of May, 2026.

   /s/Amy E. Potter
Amy E. Potter
United States Magistrate Judge

13 – OPINION AND ORDER